KOVACS et al., Appellants,

v.

THOMSON, HEWITT & O'BRIEN et al., Appellees.

[Cite as *Kovacs v. Thomson, Hewitt & O'Brien* (1997), 117 Ohio App.3d 465.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17834.

Decided Jan. 22, 1997.

466

*Anthony W. Kerber* and *Christian F. Waag, Jr.,* for appellants.

*Alan M. Petrov* and *Rocco D. Potenza,* for appellees.

---

BAIRD, Presiding Judge.

Stephen Kovacs, Geraldine Kovacs, and Richard Baumgart, the trustee of the Kovacses' bankruptcy estate (collectively, "appellants") have appealed from an order of the Summit County Court of Common Pleas that granted summary judgment in favor of defendants Thomson, Hewitt & O'Brien ("Thomson") on the Kovacses' claim of legal malpractice. We affirm.

The Kovacses filed a joint petition for bankruptcy under Chapter 7 of the Bankruptcy Code on August 7, 1990. Pursuant to Section 727(A)(2) and (A)(4), Title 11, U.S. Code, the trustee of the Kovacses' bankruptcy estate, Richard Baumgart, filed a complaint in bankruptcy court objecting to the discharge the Kovacses sought. The trustee argued that the Kovacses had fraudulently transferred property, maintained a bank account in their minor daughter's name in order to defraud creditors, and fraudulently withheld information from him. On June 26, 1992, following a trial, Bankruptcy Judge William J. O'Neill denied the Kovacses' discharge.

On March 28, 1994, the Kovacses filed a complaint in state court against Thomson for legal malpractice. On February 15, 1995, the trial court granted the trustee's motion to intervene as an additional party plaintiff. On April 6, 1995, the trustee filed his own complaint against Thomson for legal malpractice allegedly committed upon the Kovacses. The trial court granted Thomson's motion for summary judgment against all plaintiffs on April 5, 1996.

Appellants assign five errors:

"I. The trial court erred in granting appellee's motion for summary judgment because genuine issues of material fact exist and reasonable minds could find in favor of appellants.

"II. The trial court's erroneous application of the doctrines of unclean hands and in pari delicto constitutes reversible error.

"III. The trial court incorrectly and prejudicially ruled that appellants' legal malpractice claim is property of the estate.

"IV. The trial court erred in holding that the trustee is judicially estopped from maintaining this action because his position is alleged to have been inconsistent.

"V. The trial court's holding that the trustee is barred from this action as a result of appellants' alleged fraudulent conduct, is inconsistent with the substantive law to be applied in this case."

Appellants assert that Thomson negligently prepared the Kovacses' bankruptcy petition and negligently failed to advise the Kovacses that certain property transfers of theirs would provide a basis upon which their bankruptcy discharge could be denied, unless the Kovacses were to delay filing for bankruptcy until one year had elapsed since the transfers took place. But for Thomson's negligence, appellants claim, the Kovacses would not have been denied a discharge.

In granting summary judgment to Thomson, the trial court concluded that "whether [the Kovacses] received negligent advice from [Thomson] is immaterial to this court's decision." This is so, according to the trial court, because (1) the Kovacses lacked standing to bring the malpractice claim; (2) the only person with standing to bring the claim, the trustee, was judicially estopped from doing so; and (3) the Kovacses' claim, whether brought by the Kovacses or by the trustee, is barred by the fraudulent conduct of the Kovacses. We affirm the trial court's grant of summary judgment to Thomson because (1) the Kovacses lacked standing to bring the malpractice claim, as it was property of the bankruptcy estate; and (2) the trustee was deprived of capacity to bring the claim derivatively because he filed his complaint after the statutory limitation period had run. Appellants' lack of standing and capacity to pursue the claim renders moot their first, second, fourth and fifth assignments of error. We proceed to discuss their third assignment of error and the issue of the trustee's capacity.

II

Appellants' third assignment of errors states:

"The trial court incorrectly and prejudicially ruled that appellants' legal malpractice claim is property of the estate."

The trial court found that any malpractice claim the Kovacses had against Thomson was a legal interest of which the Kovacses became divested when it became an asset of the bankruptcy estate pursuant to Section 541(a)(1) of the Bankruptcy Code. The Kovacses argue that because their malpractice claim did not accrue under Ohio law until after their bankruptcy petition had been filed, the claim did not become property of the bankruptcy estate, and the Kovacses retained standing to pursue the claim. The trial court was correct.

■ The Kovacses' bankruptcy case commenced upon their filing of a voluntary petition for bankruptcy protection. Sections 541(a) and 301, Title 11, U.S. Code. "[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. Section 541(a)(1), Title 11, U.S. Code. Estate property includes causes of action existing at the time a case commences. *United States v. Whiting Pools, Inc.* (1983), 462 U.S. 198, 205, 103 S.Ct. 2309, 2313–2314, 76 L.Ed.2d 515, 522, fn. 9.

■ Where a cause of action is property of the bankruptcy estate, the debtor is divested of it and only the trustee has standing to assert the claim, unless the trustee abandons the claim. *Folz v. BancOhio Natl. Bank* (Bankr.S.D.Ohio 1987), 88 B.R. 149, 150. The trustee did not abandon the Kovacses' malpractice action. It follows that if the trial court properly determined that the Kovacses' malpractice claim belongs to the estate, then the Kovacses had no standing to bring the claim.

■ The issue, then, is the point at which a cause of action becomes property of the estate under Section 541, Title 11, U.S. Code. The Kovacses argue that their interest in a malpractice action against Thomson did not exist at the commencement of their bankruptcy case because it had not accrued for statute of limitations purposes under state law. Thomson concedes that the statute of limitations on the malpractice action began to run after the commencement of the Kovacses' bankruptcy case. Likewise, according to the Kovacses, their interest in this cause of action did not exist until after the commencement of their bankruptcy case and therefore belongs to them, not the estate.

Legislative history with respect to Section 541 and case law suggest that the existence of the Kovacses' cause of action dates from the point at which all elements of the malpractice claim became present, regardless of whether the malpractice claim had yet accrued for purposes of establishing the limitations period for bringing the claim. By quoting the following legislative history of Section 541, the Sixth Circuit Court of Appeals identified policies served by making broadly inclusive the category of estate property:

"The bill makes significant changes in what constitutes property of the estate. Current law is a complicated melange of references to state law, and does little to further the bankruptcy policy of distribution of the debtor's property to his creditors in satisfaction of his debts. * * * The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case." *In re Cottrell* (C.A.6, 1989), 876 F.2d 540, 542, quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 175 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 6136.

The policy of distributing debtor property to creditors is furthered by limiting the section's references to state law. The key determination is premised upon "what interests in property the debtor has," conceived broadly, at the commencement of the case. Because the elements of a cause of action for legal malpractice are defined by state law, Section 541 must refer to state law at least to that extent in determining what interest in property the debtor has. Federal circuit courts of appeals have interpreted Congress to intend the bankruptcy estate to comprise property interests that exist at the time of the commencement of the case, even though the interests in question were not transferable or were contingent and not immediately subject to possession by the debtor. See, e.g., In re Cottrell (C.A.6, 1989), 876 F.2d 540, 542; and In re Ryerson (C.A.9, 1984), 739 F.2d 1423, 1425.

In view of the policies to be served by Section 541, we conclude that whether a cause of action *exists* at the commencement of a bankruptcy case, and hence becomes property of the bankruptcy estate, is a question independent of state law concerning when the cause of action *accrues*. To conclude the contrary would introduce into Section 541 determinations the "melange of references to state law" from which Congress intended to remove Section 541 determinations.[1]

We agree with the approach adopted in *In re Dow* (Bankr.Ct.S.D.Ohio 1991), 132 B.R. 853, where the bankruptcy court equated the existence of a cause of action for legal malpractice with the presence of its elements under state law. *Id.* at 859.[2] To establish a cause of action for legal malpractice under Ohio law, a plaintiff must demonstrate "1) that an attorney-client relationship existed between the plaintiff and the defendant that imposed a duty on the defendant to use the skill, knowledge, care, and diligence normally possessed by members of the legal profession in similar communities; 2) that the defendant breached that duty; and 3) that the plaintiff suffered damages that were proximately caused by that breach." *Sevin v. Thompson, Hine & Flory* (May 29, 1996), Summit App. Nos. 17349 & 17483, unreported, at 17, 1996 WL 285374; see, also, *Krahn v.*

---

1. According to the Ninth Circuit Court of Appeals, "[b]y adopting a comprehensive definition of property, the Bankruptcy Reform Act reduced the bankruptcy court's cumbersome reliance on state law analysis for determining property to be included in the estate." *Sierra Switchboard Co. v. Westinghouse Elec. Corp.* (C.A.9, 1986), 789 F.2d 705, 709.

2. In *Folz v. BancOhio Natl. Bank* (Bankr.S.D.Ohio 1987), 88 B.R. 149, 150, the bankruptcy court found that each cause of action had accrued before the filing of the bankruptcy petition, but also discussed its reasoning in terms of whether the *injury* occurred before the commencement of the case:

"[P]laintiff's argument that these causes of action accrued after their bankruptcy petition was filed must fail. The injury claimed by plaintiffs based upon their federal claims, which are the focus of this Court's inquiry for jurisdictional purposes, clearly occurred prior to the [plaintiffs] filing for bankruptcy."

*Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058, syllabus. In the case *sub judice,* there is no dispute that an attorney-client relationship existed prior to the filing of the bankruptcy petition. There is no dispute that any alleged breach occurred before the petition was filed. The *Dow* court explicitly rejected the proposition that, when misadvised about bankruptcy, a plaintiff suffers damages only when adverse economic consequences arise—rather, damages from advising and representing debtor "occurred at the point of the filing of the petition." *Dow,* 132 B.R. at 860. Although it classified the cause of action as existing prior to the filing of the bankruptcy petition, the *Dow* court did not date the accrual of the cause of action for statute of limitations purposes until well after the filing of the petition.[3] *Id.*

We find that the Kovacses' legal malpractice claim existed at the time they filed their petition in bankruptcy and is therefore properly considered an asset of the bankruptcy estate under Section 541(a)(1), Title 11, U.S. Code. This is so despite the fact that the cause of action did not accrue for purposes of determining the limitations period under state law until well after the petition was filed. As a property right belonging to the bankruptcy estate, the Kovacses' cause of action against Thomson is vested solely in the trustee in bankruptcy and subject to his control. Accordingly, only the trustee had standing to bring the malpractice claim asserted in the Kovacses' complaint. Appellants' third assignment of error is overruled.

### III

Appellants' fourth assignment of error states:

"The trial court erred in holding that the trustee is judicially estopped from maintaining this action because his position is alleged to have been inconsistent."

This assignment of error is made moot by the fact that the trustee's action against Thomson is barred because the trustee did not file this claim until after the statutory limitations period had run.

A trial court's judgment must be affirmed if any valid grounds are found on review to support it. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174–175; *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275. Thus, "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a

---

3. At issue in *Dow, inter alia,* was whether the trustee's suit against the debtor's attorneys was barred by the running of the limitations period under Ohio law.

basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150, 154.

The Ohio Supreme Court has held that a legal malpractice cause of action accrues upon the discovery of the alleged malpractice or upon the termination of the attorney-client relationship for a particular transaction, whichever occurs later. *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus; *Sevin v. Thompson, Hine & Flory* (May 29, 1996), Summit App. Nos. 17349 and 17483, unreported, at 9, 1996 WL 285374. In answers to interrogatories, attached by Thomson to its motion for summary judgment, both Stephan and Geraldine Kovacs establish April 27, 1993 as the date when the attorney-client relationship between them and Thomson terminated. The latest conceivable date on which the Kovacses could have discovered the alleged malpractice was March 28, 1994, when the Kovacses filed their complaint against Thomson. Hence, the Kovacses' legal malpractice claim against Thomson accrued no later than March 28, 1994. Because the trustee did not file his complaint against Thomson until April 6, 1995, more than one year after the action accrued, his claim is barred by the running of the statutory limitations period.

Since the Kovacses lack standing and the trustee lacks capacity to pursue the malpractice claim against Thomson, all five assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DICKINSON and SLABY, JJ., concur.